_____

**FRED J. JONES,**
**aka FREDDIE WALKER,**
                              **Petitioner,**

**v.**                                              **Case No. 12-CV-1310**

**MARC CLEMENTS,**
**Warden, Dodge Correctional Institution,**
                              **Respondent.**
_____

## DECISION AND ORDER

In this decision and order, I address pro se petitioner Fred Jones' petition for a writ of habeas corpus under 28 U.S.C. § 2254.

### I. Background

In the early morning of February 11, 2009, two men forced their way into Dianne Dallas's Milwaukee home. Dallas recognized one of the intruders, who was armed with a pistol, as petitioner, who was her ex-roommate's boyfriend. Petitioner and his accomplice proceeded to rob Dallas and her roommates of valuables, and at various points petitioner pointed the gun at the victims and threatened to shoot them. One of Dallas' roommates hid in a closet during the incident and called 9-1-1. Police arrived and found petitioner and his accomplice walking down the street carrying property that was later identified as coming from Dallas' residence.

Petitioner was charged with six felonies and two misdemeanors, some of which included a repeater enhancer. In February 2010, the morning his trial was set to begin, petitioner pled guilty to one count of armed robbery with use of force, one count of armed burglary, and one count of possession of a firearm by a felon. The state agreed to remove

the repeater enhancers, to dismiss the remaining charges outright, and to leave the length of petitioner's prison sentence to the court's discretion. The court accepted the plea agreement and sentenced petitioner to: twelve years and six months of initial confinement and ten years of extended supervision for the armed robbery with use of force charge, consecutive with any other sentence; eight years of initial confinement and five years extended supervision for the armed burglary, concurrent with the armed robbery sentence; and five years of initial confinement and five years of extended supervision for the firearm possession, concurrent with the other two sentences.

## II. Discussion

Petitioner raises numerous grounds for federal habeas relief. It was sometimes unclear in petitioner's filings what type of constitutional claim he was bringing and how his federal claims related back to the claims he brought during direct appeal in state court, and sometimes petitioners claims seemed to overlap. I have done my best to construe petitioner's claims liberally. *See Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004).

### A. *Miranda* violation

First, petitioner argues that his *Miranda* rights were violated when police continued to question him despite his request to remain silent. Petitioner's appellate counsel filed a no-merit brief during his appeal, and the Wisconsin Court of appeals adopted its analysis on this issue as its own. The no-merit brief describes the background of this claim as follows:

> At the end of one hour and seven minutes of questioning, the exchange on the DVD recording of Mr. Jones's statement was as follows:

> Jones:          The fact is, I'm not gonna open my door for nobody that ain't

2

|            |                                                                                                                      |
|------------|----------------------------------------------------------------------------------------------------------------------|
| Detective: | call you or expecting you.<br>Well that's you and you can't tell me that everybody's exactly like you.                |
| Jones:     | So, a lady gonna open her door up?                                                                                    |
| Detective: | She did. That's five in the morning. You expecting a bad guy to knock on your door at five in the morning? And that's going to come in and rob you? I don't know. |
| Jones:     | You put me away in my cell.                                                                                           |
| Detective: | (Pause). Maybe we'll do that. You really need to think about what you're thinking about. . .                         |
| Jones:     | I don't want conversation no more. . .                                                                               |
| Detective: | . . . what you're doing here because you're screwing yourself up big time. You really are.                           |
| Jones:     | I'm not screwing myself up here.                                                                                      |
| Detective: | Yes, you really value your life very little, don't you?                                                              |
| Jones:     | Yeah, put be back in my cell.                                                                                         |
| Detective: | Alright. I'm gonna let you get a little more sleep. Time is 2:15. Excuse me, it's not 2:15. 10. (Pause). We'll stop this here and let you think about some things. |

Resp. Ex. I at 11–12, ECF No. 10-9. After this exchange, another officer continued to question petitioner. During this conversation, petitioner admitted to taking the property and to discarding the firearm. Resp. Ex. E at 7, ECF No. 10-5.

Adopting appellate counsel's analysis on this issue as its own, the appeals court reasoned:

> Mr. Jones appears to claim that his confession was constitutionally infirm because he invoked his right to remain silent, because his attorney was not present, and because he was coerced. . . .

> Although the police must cease questioning when a defendant clearly and unequivocally requests counsel during custodial interrogation, *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981), or when he cuts off questioning by invoking his right to remain silent, *State v. Ross*, 203 Wis. 2d 66, 74 (Ct. App. 1996), equivocal or ambiguous requests do not require cessation of questioning, *Davis v. United States*, 512 U.S. 452 (1994) (requests for counsel must be unambiguous to require cessation of questioning); *State v. Jennings*, 252 Wis. 2d 228, 243 (2002) (same); *Ross*, 203 Wis. 2d at 71 (invocation of the right to silence must be unambiguous to require cessation of questioning).

> The record in this case does not establish that Mr. Jones clearly invoked

either his right to remain silent or his right to have counsel present at questioning. Instead, his "requests" are ambiguous and equivocal. He did not mention counsel during questioning and he did not mention silence nor did he refuse to discuss the crime in the future.

Resp. Ex. I at 10–11, ECF No. 10-9.

The United States Supreme Court requires an invocation of the right to remain silent or right to counsel to be unambiguous and unequivocal. *Berghuis v. Thompkins*, 560 U.S. 370, 381–82 (2010); *Davis v. United States*, 512 U.S. 452, 459 (1994). Because the appeals court applied this standard, its decision is not contrary to clearly established federal law. Further, the court's determination that petitioner's statements, "I don't want conversation no more" and "put me back in my cell," were ambiguous and equivocal is not unreasonable.

### B. Ineffective Assistance of Counsel Claims

Next, I address petitioner's numerous ineffective assistance of counsel claims. To establish a claim for ineffective assistance of counsel, petitioner must show that his lawyer performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). To establish deficient performance, a petitioner must demonstrate that his lawyer's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Id.* at 687–88. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* To establish prejudice in the plea context, a petitioner must show that there is a reasonable probability that but for his counsel's ineffective performance, he would not have entered a plea. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**1. Failure to investigate and seek suppression based on *Miranda* violation**

Petitioner argues that his trial counsel was ineffective for failing to investigate and seek suppression of his statements to police. As explained above, the appeals court found there was no *Miranda* violation, and I concluded that its decision was not contrary to clearly established federal law or unreasonable. In terms of petitioner's claim that his trial counsel was ineffective for failing to raise a *Miranda* claim, the appeals court reasoned:

> Mr. Jones argues that trial counsel should have moved to suppress his confession. . . . He implicitly suggests that, had such motions been brought, they would have succeeded and he would not have pled guilty.
>
> Mr. Jones is wrong. Assuming, for purposes of argument only, that counsel's performance was deficient, Mr. Jones cannot prove prejudice. He cannot prove that there is a reasonable probability that counsel's errors affected the outcome, *Strickland*, 466 U.S. at 694, because he cannot establish that the motion would have succeeded.

Resp. Ex. I. at 10–11, ECF No. 10-9.

The court applied the correct *Strickland* standard to petitioner's ineffective assistance of counsel claim, and therefore its decision is not contrary to clearly established federal law. Additionally, the court's determination that petitioner was not prejudiced by his attorney's failure to investigate the *Miranda* issue and seek suppression of his statements is not unreasonable given the low likelihood of success on the issue.

**2. Failure to present plea offer**

Petitioner states that his trial attorney rejected an earlier plea offer from the prosecutor without first presenting it to petitioner. In April 2009, petitioner's attorney received a letter from the district attorney stating the following:

> Should your client elect to promptly accept responsibility and express remorse for these offenses, the State will **MOVE TO DISMISS BUT READ-IN**

**COUNTS TWO, FOUR, FIVE, EIGHT AND NINE. THE STATE ALSO WILL MOVE TO DISMISS THE HABITUAL CRIMINALITY PENALTY ENHANCER AS TO ALL CHARGES. UPON ENTRY OF PLEAS GUILTY TO COUNT ONE (ARMED ROBBERY), COUNT THREE (BURGLARY ARMED), AND COUNT 6 (POSSESSION OF FIREARM BY FELON) THE STATE WILL RECOMMEND A TERM IN THE WISCONSIN STATE PRISON SYSTEM WITH THE DURATION AND DIVISION TO SOUND DISCRETION OF THE COURT.**

Resp. Ex. K at 10, ECF No. 10-11. Petitioner claims, and respondent does not dispute, that his attorney only told petitioner about this offer days after he had rejected it, telling petitioner "Why would I take a plea in this case with [Judge] Patricia McMahon and receive 20 years, when we can go to trial and receive the same 20 year sentence so I rejected the plea." Pet. at 6, ECF No. 1.

The appeals court issued a decision in November 2011, after the United States Supreme Court heard arguments in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), but before it had issued a decision.[1] After *Frye* and *Lafler*, the Wisconsin Supreme Court ordered further briefing on this issue in light of the two decisions. It ultimately denied review, but two justices dissented, stating that "[t]here is a possible issue of arguable merit in this case regarding trial counsel's rejection of a plea offer without informing Mr. Jones of that fact." Resp. Ex. S at 1, ECF No. 10-19.

Under § 2254(d), if the state court decides an issue on the merits, I may only grant relief if the adjudication resulted in a decision contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or if the adjudication was based on an unreasonable determination of the facts in

---

[1] In *Frye* and *Lafler*, the United States Supreme Court examined ineffective assistance of counsel claims where an attorney failed to present a plea offer to a criminal defendant.

light of the evidence presented. However, if the state court decision was not on the merits, I review the claim de novo. *Cone v. Bell*, 556 U.S. 449, 472 (2009). Respondent urges me to find the Wisconsin Supreme Court's denial of discretionary review as a decision on the merits, citing *Harrington v. Richter*, 562 U.S. 86 (2011) (holding that, "in the absence of any indication or state-law procedural principles to the contrary," there is a presumption of a merits determination when a state court summarily denies the claim). However, in *Harrington*, the court considered the California Supreme Court's denial of a state habeas petition, over which it had original jurisdiction and on which it was required to rule. *See Williams v. Cavazos*, 646 F.3d 626, 635–36 (9th Cir. 2011), *rev'd on other grounds*, *Johnson v. Williams*, 133 S. Ct. 1088 (2013). Here, however, the Wisconsin Supreme Court merely denied discretionary review, which under Wisconsin law is not a decision on the merits. *See State v. Shillcutt*, 119 Wis. 2d 788, 806 (1984) ("A denial by this court of a request for certification carries no implication of approval or agreement. . . . [It] means nothing more than 'unusual circumstances' are not present to require this court to review the case."). Thus, I "look through" the denial of discretionary review to the last reasoned state court decision, that of the Wisconsin Court of Appeals.

The Wisconsin Court of Appeals addressed this claim by stating:

> Finally, Jones asserts that trial counsel provided ineffective assistance when he failed to inform Jones that he rejected a plea offer from the State five months before Jones ultimately pled guilty. Jones states that "he was first made aware of this rejected plea offer days after" trial counsel rejected the plea. Because Jones entered his guilty plea with the knowledge that his trial counsel had allegedly rejected a plea offer five months earlier without consulting with Jones, Jones waived his right to challenge trial counsel's performance with respect to that earlier plea offer. *See Kelty*, 294 Wis. 2d 62, ¶ 18. Thus, there would be no merit to asserting trial counsel ineffectiveness concerning an earlier plea offer.

Resp. Ex. L at 6–7, ECF No. 10-12. The appeals court decided this issue based on the Wisconsin guilty-plea-waiver rule, a "rule of administration" that states a plea "waives all nonjurisdictional defects, including constitutional claims," *State v. Kelty*, 294 Wis. 2d 62, 73–74 (2006). This is not a decision on the merits, therefore I may address the merits of petitioner's claim de novo.[2]

*Frye* and *Lafler* explain the *Strickland* ineffective assistance of counsel standard in the plea context where, as here, counsel rejects or allows to lapse a plea offer without presenting it to his client. Counsel has a duty to communicate formal plea offers from the prosecution to the accused; failure to do so constitutes deficient performance. *Frye*, 132 S. Ct. at 1409. However, petitioner still must show that his counsel's deficient performance prejudiced him. *Id.* To show prejudice, petitioner must show "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," and "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*

Petitioner has established that his trial counsel performed deficiently by failing to present the terms of the April 2009 offer to him before rejecting it. However, petitioner has failed to show prejudice. The offer that petitioner eventually accepted and pled to in February 2010 was virtually identical to the April 2009 offer; he pled guilty to the same

---

[2] Even if the state court decision were considered a decision on the merits for purposes of § 2254, I may still address the merits de novo because the decision was contrary to clearly established federal law. *Lafler*, 132 S. Ct. at 1390. Neither the appeals court nor the supreme court applied the correct constitutional standard under *Frye* and *Lafler*, which was clearly established at the time the supreme court denied review and the state court decision became final.

three counts, and the prosecutor agreed to drop the repeater enhancer in both offers. In fact, the February 2010 offer was slightly better in that the prosecutor agreed to (and in fact did) dismiss outright the remaining charges rather than read them in. Thus, petitioner has not shown that the April 2009 offer was more favorable to him by reason of a plea to a lesser charge. The offers were also identical in terms of sentencing; the prosecutor agreed in both offers not to recommend a specific length of incarceration. Thus, petitioner has failed to establish that either his conviction or his sentence would have been less severe under the earlier plea offer.

**3. Failure to challenge breach of plea agreement**

Petitioner also argues his trial counsel was ineffective for failing to challenge the prosecutor's breach of the plea agreement. Petitioner's appellate counsel describes the background of this claim as follows:

> The plea agreement both obliged the state to move to dismiss numerous charges and enhancers (which Mr. Jones does not dispute occurred) and to take certain actions at sentencing. With regard to sentencing, the state was: (1) not to "recommend any specific length" but was to recommend "a term of imprisonment;" (2) was to request a presentence investigation report and (3) was to recommend that the sentences on the burglary and possession of a firearm charges run concurrently to any sentence on the armed robbery. More important, the state specifically retained the right to "make remarks regarding any facts that it deems relevant to the Court fashioning an appropriate sentence."

> The state neither recommended a specific term of imprisonment nor expressed any reservations as to its recommendations. Instead, what Mr. Jones believes violated these terms is the prosecutor's conveyance of the victim's statement at sentencing, as follows (in relevant part):

> > My last comments regarding seriousness of the offense, I'll incorporate this information that was conveyed to me yesterday from the victim advocate that's been working with the victims in this matter. Diane Dallas had conveyed to her that she did not wish to attend the sentencing on this case, but she did have some things that she wanted me to convey on her behalf. So I'm conveying the following information on behalf of her given that she is

not at the sentencing hearing and apparently either does not want to be for some reason or cannot be.

***

She said although she did not have to testify before the Court or in this trial, she did testify at the prelim and revocation hearings and that that process was very difficult for her and that she is asking – this is on her behalf, not the State but she, as the victim in this matter would like to see Mr. Walker Jones do 40 years confinement.

***

So I think from the statements that she's asked us to relay on her behalf, it's clear that this continues to be traumatizing for her and likely will for years to come. And that makes it a very serious offense.

Resp. Ex. I at 5–6, ECF No. 10-9.

The Wisconsin Court of Appeals adopted appellate counsel's analysis that this issue

lacked merit, reasoning:

> When a plea "rests in a significant degree" on an agreement by the prosecutor, such that "it can be said to be part of the inducement or consideration" for the plea, the prosecutor must fulfill her promise. *Santobello v. New York*, 404 U.S. 257, 262 (1971). Moreover, a prosecutor may not express personal reservations about the terms of the agreement. *State v. Poole*, 131 Wis. 2d 359, 360 (Ct. App. 1986). Nevertheless, the State has a right to put before the court the statements of crime victims, *see State v. Voss*, 205 Wis. 2d 586, 595 (Ct. App. 1996), and victims of crimes specifically have the right "to submit a written statement to be read in court," Wis. Stats. § 972.14(3)(a). Morever, the law requires the prosecutor to inform the victim of the right to provide such a statement. *Id.* § 972.14(3)(b). As the court below correctly noted, "The victim is not part of the plea negotiations."

> In this case, however, the prosecutor fulfilled her promise. She did not directly or indirectly violate the plea agreement. Instead, she commented on the victim's trauma, as the agreement allowed her to do, and she conveyed the victim's statement to the court, as the law allowed to do. . . .

> [The state's] recommendation does not violate the plea agreement because the prosecutor was careful not to endorse the victim's request, either directly or indirectly. As the prosecutor explained "this is on her behalf, not the State." The prosecutor then framed the victim's statement as a demonstration of the extent of her trauma, something the plea agreement expressly allowed the prosecutor to comment on. She could comment because the victim's trauma is a fact the state

"deem[ed] relevant to the Court fashioning an appropriate sentence."

Resp. Ex. I at 4–7, ECF No. 10-9.

In determining whether the prosecutor breached the plea agreement, the court applied the correct federal case law, *Santobello v. New York*, 404 U.S. 257 (1971), and thus its decision was not contrary to clearly established federal law. I also cannot say that the court unreasonably applied this case law to the facts. Based on the fact that the prosecutor was careful enough to clarify that the 40 year recommendation was that of the victim and not the state, the court's conclusion that this was not a breach of the plea agreement is not unreasonable. Because the court reasonably found that the prosecutor did not breach the plea agreement, it did not need to address whether petitioner's trial counsel was deficient for failing to object to it under *Strickland*. Even if trial counsel had objected to the alleged breach, petitioner was unlikely to win anyway, meaning there was no prejudice under *Strickland*.

**4. Failure to investigate issues raised at revocation hearing**

Petitioner next argues that his trial counsel failed to investigate credibility issues raised by the victim's statements at petitioner's revocation hearing. The court, adopting the analysis of appellate counsel, described and analyzed this claim as follows:

> Mr. Jones alleges that trial counsel was ineffective for failing to investigate issues raised at the revocation hearing. This issue fails because Mr. Jones cannot prove that trial counsel's performance was unreasonable. Mr. Jones therefore cannot establish deficient performance.
>
> In this case, trial counsel obtained the transcript of the testimony of the victim at the revocation hearing. To establish deficient performance, Mr. Jones has to specifically allege what trial counsel failed to investigate and what he would have found. It is not clear what "concerns of the alleged victim's credibility" should have been investigated beyond obtaining the transcript. Counsel had the information

concerning any discrepancies between the police reports, the preliminary hearing testimony, and the revocation hearing testimony and could have used them if the case had gone to trial and the victim had testified. Counsel therefore was prepared to cross-examine the victim if the case had gone to trial. Credibility is a matter for the jury, so no discrepancies found between these documents would have provided any basis for dismissing the case prior to trial.

Resp. Ex. I at 16–17, ECF No. 10-9.

Because the court applied the correct *Strickland* standard, the court's decision was not contrary to clearly established federal law. Further, I find nothing unreasonable about the court's application of the law to this case. Based on the appeals court's analysis, trial counsel appears to have reasonably prepared to impeach the victim based on her inconsistent testimony; beyond this, petitioner has failed to what more his attorney should have done.

**5. Failure to investigate his co-defendant's plea deal**

Petitioner also argues his trial counsel was ineffective for failing to determine the plea deal his co-defendant was offered before petitioner's plea hearing. The court, adopting the analysis of appellate counsel, described and analyzed this claim as follows:

Co-defendant Dubose pled guilty on February 5, 2010 to one count of robbery with threat of force and to one count of burglary while armed with a dangerous weapon. Mr. Jones alleges that he would not have entered his guilty pleas if he had known that his co-defendant pled to only two charges and further alleges that trial counsel was ineffective for not providing this information.

Mr. Jones claims that trial counsel's failure to attend the co-defendant's plea itself was deficient performance. Mr. Jones is incorrect. Although the court appearance at which co-defendant Dubose pled was to have been a joint one with Mr. Jones and trial counsel, neither Mr. Jones nor trial counsel were present. Trial counsel had telephoned the court and explained that he was in a jury trial out at Children's Court. Because no reasonable attorney would have left an ongoing jury trial rather than adjourn a court appearance for another client, trial counsel was not, as Mr. Jones suggests, ineffective for failing to be present in court that day.

Assuming, for purposes of argument only, that Mr. Jones could establish deficient performance nevertheless in failing to investigate what happened in court that day, Mr. Jones cannot establish prejudice because Mr. Jones cannot establish that diligent investigation would have made that information available on the morning of the scheduled trial when Mr. Jones entered his plea.

Whether trial counsel could have learned the information in time is unclear. Ideally, counsel could have checked on CCAP and would have known the charges to which the co-defendant pled. But whether that information was available on CCAP is unknown. Sometimes, it can take several days for information to appear on CCAP. No transcript of that plea hearing yet existed and counsel could not have obtained one in three days between that plea an the one in this case. Moreover, whatever the "open file" policy of the Milwaukee District Attorney's office with regard to a defendant's own file may be, Mr. Jones has not and cannot establish that it applies to allow an attorney to review the complete file of a co-defendant. In addition, whether the state would have explained exactly the terms of that plea bargain to Mr. Jones's counsel is unclear, especially as the cases were assigned to different prosecutors.

Delay likely was not possible and Mr. Jones would not have gotten an adjournment for his attorney to find out the information. Reading between the lines of the transcript of the plea hearing, the court normally did not allow the entry of negotiated pleas on the morning of trial. The court made an exception because of some difficulties with getting Mr. Jones produced for the final pre-trial.

Nor was it likely that the state would make an agreement with Mr. Jones similar to that it made with co-defendant Dubose. Mr. Jones was the instigator of the events, and Mr. Jones had a more serious criminal record than Mr. Dubose. More important, prosecutors often offer the better terms to the first of two co-defendants to enter a plea and Mr. Dubose's plea occurred before Mr. Jones, perhaps in anticipation that he would testify at Mr. Jones's trial.

Resp. Ex. I at 17–19, ECF No. 10-9.

The court's decision is not contrary to clearly established federal law because it applied the correct *Strickland* standard. Nor was the court's application unreasonable. Even if trial counsel's failure to determine the details of the co-defendant's plea deal was deficient, the appeals court's analysis that this deficient performance did not prejudice petitioner was reasonable. As the appeals court points out, it is unclear whether his attorney would have been able to obtain the information in time for his plea hearing had

he tried. Presumably, petitioner still would have entered his plea had his trial attorney tried and failed to obtain this information in time given the fact he decided to accept the plea offer without the information to begin with. And despite petitioner's assertion that he would not have entered his plea had he known the details of his co-defendant's plea deal, other evidence suggests the outcome would not have been any better. *Lockhart*, 474 U.S. at 58–60 (noting that the prejudice assessment in the plea context includes "predictions of the outcome at a possible trial"). First, the prosecutor's plea offer to petitioner was practically identical to the offer she made in April 2009, suggesting that petitioner would not have been able to leverage his co-defendant's deal into a more favorable deal for himself. Second, the parties anticipated that after the co-defendant entered his plea, he would testify against petitioner at trial, making it less likely that petitioner would succeed at trial.

### 6. Failure to challenge prolonged detention

Petitioner alleges that his rights were violated when he was not given a second probable cause hearing after new charges were added to the complaint. Specifically, petitioner alleges that "the probable cause determination for petitioner expired on February 15, 2009, and that he was then transferred from Milwaukee County custody to the custody of the Wisconsin Department of Corrections ("DOC") on a probation hold. Petition at 12–13, ECF No. 1. Petitioner seems to argue that the prosecutor conspired with the DOC to hold him without probable cause in violation of *Riverside v. McLaughlin*, 500 U.S. 44 (1991), which requires a probable cause determination within 48 hours of a warrantless arrest. When he raised this issue in the state court, he framed it as an ineffective assistance of counsel claim, *see* Resp. Ex. G at 16, ECF No. 10-7 ("Attorney Cossi was

ineffective because there is a burden on the arrested individual to prove that the probable cause determination was delayed unreasonably yet he did not represent the defendant on this constitutional right."). However, in his federal habeas petition, he seems to frame this claim as a due process/Fourth Amendment claim rather than an ineffective assistance of counsel claim. I will construe his claim broadly as an ineffective assistance of counsel claim and proceed to consider it. Adopting his appellate counsel's analysis of this claim, the appeals court explained his claim and reasoned as follows:

> Mr. Jones appears to claim that counsel was ineffective for failing to challenge his conviction or the complaint based upon *Riverside*, 500 U.S. 44. Assuming, for purposes of argument only, that counsel's failure to make such a challenge was deficient performance, there was no prejudice because Mr. Jones would not have been in any different position with regard to his plea if such a challenge had been made. *See Strickland*, 466 U.S. at 694.

> Although he admits that the court found probable cause for his arrest within 48 hours of his arrest, he somehow believes that this determination "lost its validity." Even if this assertion were true, the error would not be a jurisdictional defect or cause the court to lose competency unless the delay resulted from a deliberate violation that prejudiced Mr. Jones's ability to prepare a defense. *State v. Evans*, 187 Wis. 2d 66, 92 n.6 (1994). Instead, the normal remedy would be suppression of evidence obtained after the delay became unreasonable.

> In this case, assuming for purposes of argument only, that the delay between February 15, 2009 (when Mr. Jones alleges charges were dismissed) and February 19, 2009 (when the complaint was issued) somehow became unreasonable, the four day delay did not prejudice Mr. Jones's ability to prepare a defense. Moreover, Mr. Jones's statements would not be subject to suppression on this basis. His statements to police occurred on February 11, 2009 and February 12, 2009 and therefore occurred prior to the dismissal of the charges and were not a result of that four-day delay.

Resp. Ex. I at 15–16, ECF No. 10-9.

The appeals court applied the proper Fourth Amendment standard under *Riverside* to the underlying lack of probable cause claim and the proper *Strickland* standard to the

15

ineffective assistance of counsel claim, therefore its decision was not contrary to clearly established federal law. Further, the court's determination was not unreasonable. Petitioner offers no evidence that the prosecutor and DOC conspired to hold him unlawfully. The DOC is authorized to hold someone on a suspected supervision violation, even if new charges have not been issued. Assuming trial counsel's performance had been deficient for failing to challenge petitioner's detention between February 15 and February 19, 2009, the proper remedy for this violation would be suppression of any evidence obtained during that time. *See State v. Koch*, 175 Wis. 2d 684, 699–700 (1993) (explaining suppression of evidence is the proper remedy unless the evidence "was not a consequence of the *Riverside* violation"). As the court noted, no relevant evidence was obtained during those days; petitioner's statements to police were made before this four-day period began.

### 7. Advice to plead to charge when no factual basis for charge existed

Petitioner also argues that his trial counsel was ineffective fo advising him to plead to the felon-in-possession-of-a-firearm charge because there was no factual basis for that charge. In his state appeal, petitioner framed this claim as a plea withdrawal and not an ineffective assistance of counsel claim, and the state court treated it as such. The court, adopting his appellate counsel's analysis as its own, explained:

> Mr. Jones argues that there is no factual basis for his guilty plea to the charge of felon in possession of a firearm. He therefore seeks to withdraw his plea.
>
> Wisconsin Statutes § 971.08(1) requires the trial court to make sufficient inquiry to satisfy the court that the defendant committed the crime. Mr. Jones pled guilty to one count of felon in possession of a firearm. The trial court established that Mr. Jones was "stipulating to the facts in the complaint that underlie" the charges to which he was pleading and that Mr. Jones personally agreed to that

stipulation.

The charge of felon in possession of a firearm requires the state to prove that: (1) Mr. Jones had been convicted of a felony in this state and (2) subsequently possesses a firearm. Wis. Stats. § 941.29(1) & (2)(a). Mr. Jones does not dispute that the record established that he was convicted of a felony. . .

The dispute appears to be over whether Mr. Jones "possessed" a firearm. But the facts set forth in the complaint clearly provide a basis for the belief that Mr. Jones possessed a gun. The complaint alleged that Ms. Dallas told police that Mr. Jones pointed a gun in her face and said, "This is a robbery, give me everything you got," and that he struck her in the head with the gun, causing a cut. Moreover, Ms. Dallas made the same claim when she testified at the preliminary hearing. . .

Regardless whether DNA or fingerprint evidence ties Mr. Jones to the gun, a reasonable jury faced with the evidence available could find that he possessed a gun.

Resp. Ex. I at 2–4, ECF No. 10-9.

In terms of petitioner's assertion that his counsel was ineffective for advising him to plead to this charge, I find that petitioner has failed to show deficient performance or prejudice under *Strickland*. Given that the appeals court reasonably found that there was a factual basis for the felon-in possession-of-a-firearm charge, counsel's advice during plea negotiations cannot be said to be deficient. Nor can petitioner show that the outcome of his case would have been better had he not pled guilty. *Lockhart*, 474 U.S. at 58–60. Considering the fact that the prosecutor's offer had not changed in months, the prosecutor was unlikely to give petitioner a better plea offer, and petitioner has not shown that the outcome would have been better had he gone to trial.

### 8. Failure to investigate lack of DNA and fingerprint evidence

Related to the felon-in-possession-of-a-firearm plea issue above, petitioner argues that his attorney failed to investigate "exculpatory" DNA and fingerprint evidence.

Specifically, the prosecutor informed petitioner's attorney and the court that the gun allegedly used in the crime did not contain petitioner's DNA or fingerprints, and petitioner believes his attorney should have done more to investigate this issue. The state court did not separately address this claim, instead wrapping it up into petitioner's challenge to the factual basis for the felon-in-possession-of-a-firearm charge, in which the state court concluded that even without DNA or fingerprint evidence, there was enough evidencing linking petitioner to the firearm to support the felon-in-possession-of-a-firearm charge.

Applying *Strickland*, I find that the petitioner has not shown deficient performance or prejudice. Petitioner has not made it clear what more his attorney could have done with this information and how further investigation would have assisted his defense. Petitioner also has not shown that the outcome of his case would have been different had his attorney investigated the DNA and fingerprint evidence. *Lockhart*, 474 U.S. at 58–59. First, petitioner argues that if his attorney had found someone else's DNA or fingerprints on the firearm, the judge would have suppressed the firearm as evidence. However, the state court concluded above that the victim's testimony, which included testimony identifying the gun as the one petitioner held in her face, would have been enough to defeat a suppression motion regardless of DNA or fingerprint evidence. This conclusion is reasonable because questions of fact are ultimately left to the jury.

Second, petitioner states that there is a reasonable probability that he would not have pled guilty and instead would have gone to trial; however, petitioner has failed to show that any potential evidence his attorney may have recovered would likely have changed the outcome at trial. *Id.* at 60 ("[W]here the alleged error of counsel is failure to investigate or discover potentially exculpatory evidence, the determination whether the

error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome at trial."). In fact, the outcome at trial likely could have been worse than the plea deal given the firearm evidence, the victim's testimony, petitioner's co-defendant's potential testimony, petitioner's own statements, and his past criminal history.

## C. Lack of knowing, voluntary, and intelligent plea

Next, I address petitioner's claims that his plea was not knowing, intelligent, and voluntary. The due process clause requires that when a criminal defendant enters a plea, he must do so knowingly and voluntarily. *Brady v. United* States, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969). Voluntariness cannot be inferred from silence; there must be "a record adequate for any review that may be later sought." *Boykin*, 395 U.S. at 243–44. Before pleading guilty, a defendant must receive "real notice of the true nature of the charges against him." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper." *Brady*, 397 U.S. at 755.

## 1. Defective plea colloquy and criminal complaint

Petitioner argues that the criminal complaint and his plea colloquy were deficient

for failing to inform petitioner potential penalties.[3] The appeals court independently analyzed this claim, stating:

> When a trial court accepts a plea, it "must advise the defendant personally that the terms of a plea agreement including a prosecutor's recommendations, are not binding on the court and, concomitantly, ascertain whether the defendant understands that information." *State v. Hampton*, 274 Wis. 2d 379 (2004). Here, after the State described the plea agreement, which included the outright dismissal of charges, dismissal of penalty enhancers, a sentencing recommendation that all three counts run concurrent, the trial court explicitly told Jones that "the recommendation is never something the Court has to agree with or accept." It ascertained that Jones understood that the trial court could reject any recommendation. We are satisfied that the trial court followed the dictates of *Hampton* and that there would be no merit to arguing otherwise.

Resp. Ex. L at 5–6, ECF No. 10-12.

The court examined whether the trial court fully informed petitioner of the consequences of his plea, including the fact that the court was not bound by any of the prosecutor's recommendations. Thus, the court applied the correct federal standard and its decision was not contrary to clearly established law. The court's finding that the trial court informed petitioner of the consequences of entering a guilty plea was also not unreasonable given my examination of the plea hearing transcript.

_____

[3] To the extent that petitioner argues the complaint and plea colloquy were deficient for failing to inform petitioner of certain mandatory minimum sentences, I find that this specific claim was not brought up at the state level and therefore petitioner has not exhausted this particular claim. *See* 28 U.S.C. § 2254 (b)(1)(A). Petitioner did not specifically raise the issue of mandatory minimums in his direct appeal, and thus the state court did not have a fair opportunity to address this issue. *See Mahaffey v. Schomig*, 294 F.3d 907, 914–15 (7th Cir. 2002), *cert. denied*, 537 U.S. 1120 (2003). Further, I find that because petitioner did not raise this issue in his direct appeal, he likely has procedurally defaulted on this claim. *State v. Escalona-Naranjo*, 185 Wis. 2d 168 (1994) (stating that claims not raised on direct appeal cannot be raised in a § 974.06 motion for collateral relief in the absence of sufficient reason for the omission). However, I will address petitioner's more general claim that the criminal complaint and plea colloquy did not adequately inform him of the nature and consequences of the charges, which petitioner did exhaust at the state level.

**2. Defective plea questionnaire and coercion**

Petitioner also argues that his guilty plea was involuntary because his trial counsel failed to adequately go through the plea questionnaire and coerced him into entering a guilty plea. It is unclear whether, based on these assertions, petitioner is bringing a due process claim, an ineffective assistance of counsel claim, or both. I will address both potential claims. The appeals court rejected petitioner's argument that his plea was not voluntary, stating:

> Jones asserted that he is entitled to withdraw his guilty pleas because they were now knowingly, voluntarily, and intelligently entered. Specifically, he contends that the guilty plea questionnaire was not filled out completely. He also asserts that "he did not know the terms of the plea agreement" or that "both sides were in fact free to argue" for an appropriate sentence. He also indicates that he felt "rushed" to enter the plea agreement. The record belies Jones's bald assertions. The plea agreement was stated on the record and Jones indicated several times that he understood the charges he was pleading guilty to, the plea questionnaire form, and the elements of the crimes as stated in the jury instructions that were attached to the plea questionnaire.[7] There was no indication in the plea hearing colloquy that Jones had any hesitation about proceeding with the guilty pleas. We conclude that there would be no arguable merit to asserting that Jones's pleas were not entered knowingly, voluntarily and intelligently.
>
> [7] Not only were the standard jury instructions for each crime attached to the plea questionnaire, Jones and his trial counsel also initialed the elements section on each attached jury instruction.

Resp. Ex. L at 5–6, ECF No. 10-12.

The court of appeals applied the correct federal standard, analyzing whether the record indicates petitioner was informed of and understood the consequences of entering a guilty plea, and thus the court's decision is not contrary to clearly established federal case law. Additionally, the court's application is not unreasonable. Petitioner argues that a statement his attorney made to the court that he "neglected" his client is evidence that the plea was involuntary and coerced. However, other evidence supports the appeals

court's decision. Petitioner initialed each page of the jury instructions, indicating an understanding of the nature of the charges to which he was pleading. Also, both petitioner and trial counsel indicated on the record that they had gone over everything adequately, petitioner did not need more time, petitioner agreed to the offer, and petitioner was not pressured or coerced. *See* Supplement Ex. K at 4, 9–19, ECF No. 15-11.

In an effort to construe petitioner's habeas claims liberally, I also conclude that the above evidence supports a finding that petitioner's trial counsel did not perform deficiently under *Strickland*. Thus petitioner has not shown that his counsel performed ineffectively by failing to adequately explain the plea questionnaire or by coercing him into pleading.

## D. Sentencing Credit

Petitioner also argues that under Wisconsin law, he is entitled to an additional 186 days of sentencing credit. Petitioner raised sentencing credit in his state appeal, although there he argued for 407 days, not 186. The appeals court, adopting appellate counsel's analysis, explained:

> Mr. Jones could claim that he is entitled to 407 days of sentence credit for the time he was in custody in connection with this case as well as for the time he was awaiting revocation in Milwaukee County Case No. 04CF1478. This argument has no merit because Mr. Jones's sentence in count one of this case is consecutive to any other sentence.

> When sentences are consecutive sentences, they are computed "as one continuous sentence." Wis. Stats. § 302.113(4); *see also id.* § 302.11(3). Thus, in *State v. Boettcher*, 144 Wis. 2d 86 (1988), the Wisconsin Supreme Court held that a defendant with consecutive sentences should not receive credit against both sentences for time spent in custody prior to sentencing.

Resp. Ex. E at 27, ECF No. 10-5.

Petitioner does not state how his sentencing credit issue is a constitutional claim,

although it could be considered a double jeopardy claim under the Fifth Amendment. The double jeopardy clause protects against multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 381 (1989). However, this interest in "limited to ensuring that the total punishment did not exceed that authorized by the legislature." *United States v. Halper*, 490 U.S. 435, 450 (1989), *overruled in part on other grounds by Hudson v. United States*, 522 U.S. 93 (1997); *McCloud v. Deppisch*, 409 F.3d 869, 873 (7th Cir. 2005). I will not review the state court's determination of the proper sentence credits due under state law. Further, because petitioner's "total sentence and his initial confinement time is approximately one-third the maximum possible," Resp. Ex. E at 26, ECF No. 10-5, I conclude that even if petitioner was improperly denied 186 days of sentencing credit, this does not amount to a constitutional violation because it does not push his period of confinement over the total punishment authorized by the legislature.

## E. Accumulation of Errors

Finally, petitioner argues that the accumulation of the errors discussed above amounts to a due process violation. I cannot address this claim because petitioner did not raise it in his direct appeal and has therefore failed to exhaust his state court remedies. *Mahaffey*, 294 F.3d at 914–15. Because petitioner failed to raise this issue in his direct appeal, he has likely procedurally defaulted on it. *Escalona-Naranjo*, 185 Wis. 2d at 168.

**THEREFORE, IT IS ORDERED** that petitioner's petition for a writ of habeas (ECF No. 1) corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of

appealability.

Dated at Milwaukee, Wisconsin, this 24th day of October, 2014.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge